1831.

BUCK
v.
GRIMSHAW,

BUCK vs. GRIMSHAW and others,

Whether a sale and delivery be conditional or not, depends upon the particular facts and circumstances of each case.

It may be the subject of express stipulation in the contract of sale or a matter of subsequent agreement when the delivery is made or it may be inferred from the course of the transaction and the usage of a particular trade that the vendor did not intend to make or the vendee to receive an absolute and unconditional delivery. But the condition must be made to appear as matter of evidence ; otherwise, the legal presumption would follow, from the fact of a purchaser's being in the actual possession of the goods that the delivery to him was an absolute one.

B. sold G. two hundred and twenty bales of cotton for cash on delivery. A part was delivered, without exaction of payment. G. put this part on board of a ship. Two days after he failed. B. demanded payment or a return of the part which had been delivered. G. was unable to do either ; having, on the morning of the day when B. made the demand, delivered the bill of lading to S. S. & Co., who had made advances upon it. No

fraud was charged against G. or S. S. & Co.: *Held*, to be an absolute deli- **1831.**
very which changed the right of property.

A custom of merchants must be a mercantile usage so well known and es- **BUCK**
tablished as to form a part of the law-merchant; otherwise, it is not suffi- *v.*
cient as a custom. **GRIMSHAW.**

---

The following are the leading facts in this cause and upon *October 13,*
which the decision of the Vice-Chancellor was given: *1831.*

On the twenty-fourth day of October, 1827, the complainant,
Gurdon Buck, sold to John Grimshaw two hundred and twenty *Conditional*
bales of cotton at ten cents in the pound. By the terms of *or absolute*
*delivery of*
sale, the cotton was to be paid for in cash on delivery; which *goods on a*
was to be made on or before the third day of November then *cash purchase.*
next ensuing. On the twenty-seventh day of October aforesaid,
the complainant delivered, upon the order of the defendant Grim-
shaw, twenty-nine bales of the cotton, and which were taken
from his store and put on board the ship Leeds, then about to
sail for Liverpool; and to which port Grimshaw intended to
ship the residue of the purchase by other vessels.

The complainant did not exact any payment upon de-
livering the twenty-nine bales of cotton, nor did Grimshaw
offer to pay for that portion of his purchase. At that time
neither party apprehended any difficulty in the performance
of the entire contract. Two days afterwards, but before any
more of the cotton was delivered, an unexpected failure of a
mercantile house compelled Grimshaw to stop payment and
rendered him insolvent; and on the evening of the thirtieth
day of the same month of October the complainant called upon
him and requested payment for the twenty-nine bales of cotton
or a return of the same. Grimshaw was unable to do either:
having, on the morning of the same day, delivered the bill of
lading of the cotton to Sands, Spooner & Co. (who were made
defendants.)

On the second day of November thereafter the complainant
called upon Messrs. Sands, Spooner & Co. and informed them
of the circumstances, insisting that the cotton belonged to him,
and cautioning them against doing any thing with it; to which
they replied, " they had made an advance upon the cotton to

"the defendant, John Grimshaw, and, therefore, should not "give it up."

The defendant, Grimshaw, for a length of time before his failure, had been in the habit of purchasing and shipping cotton to Liverpool to the house of Sands, Spooner & Co. there, under a verbal agreement that they were to advance to him in New York nine cents per pound upon such shipments. The cotton in question and other parcels (making in all two hundred and twenty bales) were shipped under this arrangement on board the *Leeds ;* and the bills of lading which had been so as aforesaid delivered to the house here were forwarded to their firm at Liverpool by the packet of the first day of the said November. Other shipments, upon the same understanding, were intended to be made in other vessels then about being laden for Liverpool.

Sands, Spooner & Co., from the confidence they had in the integrity of the defendant John Grimshaw and when they knew he was about to make a shipment in some particular vessel, were in the habit of advancing to him round sums of money in anticipation of the actual shipment, although upon the credit of it; and when the shipment was completed, they would calculate the amount at nine cents per pound and then make up the balance, if any, of the advance. In this way they advanced to him five thousand dollars on the seventeenth day of October, 1827; four thousand dollars on the twenty-fourth day of the same month, and four thousand dollars more on the twenty-ninth of the said October, upon the credit of various shipments and including the one by the *Leeds.* No specific advance was made on the twenty-nine bales: but the nine cents on the pound, in pursuance of the before mentioned verbal agreement, was intended to attach upon the whole of the shipment by the *Leeds* when completed.

The bill in this cause sought to compel Sands, Spooner & Co. to pay the complainant, Gurdon Buck, for the twenty-nine bales of cotton or to restore the same to him.

Mr. *G. Griffin,* on the part of the complainant, relied upon the following points:

I. The sale from the complainant to Grimshaw was a conditional one; and as it has not been complied with by the vendee, the title never passed.

II. The complainant being the unpaid vendor on a cash sale, is, at any rate, entitled to priority against every person other than a *bona fide* purchaser or a person having *bona fide* made advances on the specific property under circumstances constituting a lien thereon.

III. To constitute a lien on property by virtue of advances thereon, it is necessary the possession of the property should accompany the advances.

IV. It is not pretended that Sands, Spooner & Co. were purchasers.

V. They did not acquire possession, either actual or constructive, of the twenty-nine bales of cotton in question until the thirtieth day of October 1827, when they received the bill of lading thereof; and as all their advances to Grimshaw had been previous to that day, none of them constituted a lien on the said property so as to postpone the rights of the complainant.

VI. The advances made by Sands, Spooner & Co. to Grimshaw previous to the twenty-seventh day of October (the day of the delivery of the cotton to him) must, of course, have been made on the credit of other cotton or upon the personal credit of Grimshaw.

VII. The advance by Sands, Spooner & Co. on the twenty-ninth day of October could not have been made on the cotton shipped by Grimshaw in the ship Leeds, as more than the stipulated amount of advances on that shipment had been previously made : but was, in fact, made in anticipation of cotton to be shipped by some other vessel.

VIII. It is, at least, questionable whether, when Sands, Spooner & Co. received the bill of lading of the cotton in question, they had not reason to know or suspect the impending failure of Grimshaw.

Mr. W. Betts, for the defendants.

I. The delivery to Grimshaw of the twenty-nine bales of cotton was absolute and vested in him a perfect title as vendee.

II. Upon a supposition of the delivery being conditional, Sands, Spooner & Co. are purchasers for a valuable considera-tion and without notice : therefore, as against them, the vendor has no legal or equitable lien.

*December* 19.   THE VICE-CHANCELLOR.   No fraud is imputed in this case either to John Grimshaw or the firm of Sands, Spooner & Co. The circumstances which led to the failure of the former and his consequent inability to fulfil his contract, appear to have been entirely unexpected by all the parties ; it becomes a ques-tion, therefore, between the complainant and the house of Sands, Spooner & Co. (both equally innocent) which is to bear the loss occasioned by the failure ?

This depends, very much, if not entirely, upon the question : whether the delivery of the cotton by the complainant to Grimshaw was an absolute or a conditional delivery ?

It is insisted by the complainant's counsel, that the sale is to be regarded as a conditional one; and the decision in *Palmer* v. *Hand,* 13 *J. R.* 434, is relied upon as establishing the princi-ple, that where goods are sold to be paid for on delivery and the vendee neglects or refuses to pay for them upon the deli-very being made, the vendor has a lien for the price and may resume the possession or recover the goods in trover.   The case thus cited does not warrant so broad and general a con-clusion.   The court did not proceed upon the ground of a conditional delivery, but upon the circumstance of no delivery having, in fact, been made.   There, the lumber in dispute was in a course of delivery and before any part of it reached the purchaser his fraud was discovered and the actual delivery withheld: and, therefore, the court very properly decided that the title had not passed out of the vendor.   Indeed, the decision seems to be founded in principle upon the right of the vendor to stop the goods *in transitu :* a doctrine with which we are very familiar; and I apprehend it was intended by that case to carry the law no further.   A more recent decision of the same

court evidently restricts its operation to this principle. I allude to *Chapman* v. *Lathrop*, 6 *Cow.* 110., There, goods were sold to be paid for in cash and were suffered to pass into the possession of the vendee by actual delivery. He, afterwards, refused to pay the cash according to his contract: and the vendor undertook to disaffirm the sale and brought an action of trover against him. It was held, he could not recover: the court treating it as settled law that, where no time is agreed upon for payment at the time of a sale for cash, the delivery and payment are to be simultaneous acts; that the vendor may refuse to deliver without actual payment, on account of its being a condition of the sale, but if he chooses to deliver the goods to the vendee without payment, he waives the condition and the property passes, for the title becomes thereby changed. These are rules by which courts of law are governed in deciding upon the rights of property in chattels between a vendor and vendee where no fraud intervenes; and they admit of a qualification only in special cases: when the vendor is permitted to exercise the right of stoppage *in transitu.*

The courts of equity go no further than the courts of law in extending protection to vendors. In *Conyers* v. *Ennis*, 2 *Mason*, 236, on the equity side of the circuit court, Judge Story was strongly pressed, on account of the peculiar hardship of the case and its imposing equitable circumstances, to extend the doctrine and permit the vendor to reclaim in equity where insolvency had occurred and the goods still remained unpaid for in the hands of the purchaser. He was urged not to confine the right of a vendor to stop or reclaim goods while they were in *transit* merely. But the learned Judge considered he had no authority to break in upon the rules of law; that they were inflexible on the subject; and that he could not give the vendors any relief, even in equity, upon the idea of a lien for the payment of the purchase money or on the ground of a condition attaching to the delivery and creating a trust in the purchaser until the money was paid for the goods. The question of enforcing a supposed equitable lien for the purchase money in favor of an unpaid vendor of goods against the vendee and volunteers under him has recently been before Chancellor

1831.

BUCK
*v.*
GRIMSHAW.

Walworth in *Lupin* v. *Marie*, 2 *Paige's C. R.* 169; and from him to the court of errors in the same case, 6 *Wend.* 77.] This case settles the point definitively, that there is no such lien where there has been an absolute and unconditional delivery and no fraud. In such a state of things the vendor must look to the personal responsibility of the vendee. Still, these decisions, instead of impairing, acknowledge the right of the vendor to reclaim his goods or the proceeds where the sale or delivery is conditional or where it is evident it was not intended by the parties to be absolute until the purchase money is paid if sold for cash or upon a credit for endorsed notes and then until such notes are given: for then the vendor is considered as not parting with his title until the condition is fully complied with by the purchaser—and he may follow the goods or the proceeds in the hands of any one, except a subsequent *bona fide* purchaser without notice. These principles were first acted upon in *Haggerty* v. *Palmer*, 6 *J. C. R.* 434; and have since been applied in *Keeler* v. *Field*, 1 *Paige's C. R.* 312. They were also fully recognized by Judge Washington in *Copland* v. *Bogart* 4 *Wash. C. C. R.* 588; and were laid down by Judge Story, in his charge to the jury, in *D'Wolf* v. *Babbet*, 4 *Mason*, 289.

Whether a sale and delivery be conditional or not depends upon the particular facts and circumstances of each case. It may be the subject of express stipulation in the contract of sale or a matter of subsequent agreement when the delivery is made or it may be inferred from the course of the transaction and the usage of a particular trade that the vendor did not intend to make or the vendee to receive an absolute and unconditional delivery. But the condition must be made to appear as matter of evidence: otherwise, the legal presumption would follow, from the fact of a purchaser's being in the actual possession of the goods, that the delivery to him was an absolute one.

By the terms of sale in question, the price of ten cents per pound was to be paid on delivery of the cotton; and such delivery was to be completed on or before a particular day. There was no stipulation that the taking of a part of the cotton at a time by the purchaser was not to be a delivery *pro tanto.*

On the contrary, I think it is the fair and reasonable interpretation of the contract, that the delivery was to be made in parcels on different days, since it was the object of the purchaser to ship it by different vessels, and, therefore, when the twenty-nine bales were called for, the complainant had a right to ask for the money for that parcel, and might have refused to part with it until so much, at least, of the purchase money was paid. But he did not insist upon any payment; and must be considered as waiving the condition precedent so far as the twenty-nine bales are concerned. He, moreover, permitted the cotton to be laden on board the ship and a bill of lading to be taken by Grimshaw, without objection on his part or any reservation of a right to consider the delivery conditional, nor are there any circumstances attending the transaction from which it can be inferred the delivery was so intended. In the absence of proof or fair inference, I must presume it was intended as an absolute delivery which, of course, changed the right of property. What better evidence can we have of Grimshaw's being vested with the absolute right of property than the fact of his exercising ownership by shipping it in his own name and taking the bill of lading under his own control? No fraud or unfairness appears to have been practised for the purpose of putting the complainant off his guard. He was willing to trust to the personal responsibility of the purchaser for a few days. If he sustains a loss, it must be attributed to his misplaced confidence or to that kind of misfortune in commercial affairs from which the most prudent and careful are not always exempt.

The complainant has alleged in his bill a custom among merchants of delivering goods sold for credit where the purchaser is in fair credit and afterwards sending for the money. I do not perceive how this can vary the case. It is not alleged to be a mercantile usage (so well known and established as to form a part of the law merchant) that when goods are thus delivered it is understood and intended to be conditional and not to pass an absolute title to the purchaser: any thing short of a usage to that extent is not sufficient.

In whatever light this case is viewed, I think there is not

enough to warrant the conclusion that it was such a conditional sale or delivery of the cotton in question as to entitle the complainant to reclaim it. Even if it were otherwise, and I could feel myself at liberty to declare in favor of an equity existing in the complainant which could be enforced as between him and the purchaser, I apprehend there would still be great if not insuperable difficulty in enforcing the claim against the other parties to this suit, who made large advances upon the credit of this cotton and thereby acquired rights which the court, under the circumstances, would probably be bound to regard. It is unnecessary to pass definitively upon the point.

Upon the other ground I am constrained to dismiss the bill with costs.