Wait *v.* Green.

———————•◦•———————

## WAIT *vs.* GREEN.

C. being the owner of a horse, sold the same to B., who gave his note for the price, stating, in a memorandum at the foot, that it was given for a horse, and that C. was to hold said horse, as her property, until the note was paid. *Held* that this was a valid conditional sale, and that as between C. and B. and all persons claiming through or under B., (except *bona fide* purchasers for value,) the title to the horse remained in C.

But that as against a *bona fide* purchaser from B. without notice of the condition, and for value paid, the title must be held to have passed, and such purchaser to have acquired a perfect title to the horse.

*Held, also,* that the horse having passed into the possession of B., after the sale, apparently without objection on the part of C., the jury would have been justified in finding a delivery; not an absolute delivery, perhaps, but a conditional one; which was the kind of delivery contemplated, on the sale.

*Held, further,* that the transfer of the note, by C. to the plaintiff, before maturity, carried with it no interest in the horse, as against a *bona fide* purchaser of the horse from B.

MOTION for judgment upon a verdict for the plaintiff, subject to the opinion of the court. On the 31st of May, 1860, Thomas E. Billington purchased a horse of Catharine Comins, and gave in exchange his own note for $100, payable to Mrs. Comins or bearer, with interest, in five months thereafter. At the bottom of the note was a memorandum in these words: "Given for 1 bay horse. The said Mrs. Comins holds the said horse as her property until the above note is paid." This memorandum was also signed by Billington. Early in the month of June,

thereafter, Billington, claiming to be the absolute owner of the horse, sold him to the defendant, who purchased him in good faith, and gave to Billington, in exchange, another horse and $65 in money. During the same month of June, Mrs. Comins transferred the note of Billington to the plaintiff, without any written assignment or transfer, but by delivery merely, receiving in exchange certain personal property.* About the last of August, 1860, the plaintiff for the first time hearing of Billington's pretended sale of the horse to the defendant, called on the latter, showed him the note and the memorandum attached to it, and demanded of him the horse, or pay for him. The defendant refused to comply with the demand; whereupon, on the 22d of September, 1860, more than a month before the maturity of the note, the plaintiff commenced this action, and claimed and obtained the immediate delivery of the horse to him.

On the trial, at the circuit, the value of the horse was conceded to be $75, by both parties, for the purpose of the trial. When the plaintiff rested, the defendant was sworn on his own behalf, and testified: "I bought the horse of Billington in the fore part of June. I supposed he, Billington, owned him. Billington told me that he owned the horse, and I had no notice to the contrary. I paid him another horse and $65 in money."

The evidence being closed, the justice ordered a verdict for the plaintiff, subject to the opinion of the court at the general term. Whereupon, under such direction and order, the jury found a verdict for the plaintiff, and assessed the value of the horse at $75.

*Brown & Beach*, for the plaintiff.

I. There is no proof of any delivery of the horse by Mrs Comins to Billington, or of her consent to possession by, or delivery to him. And, under the agreement, the presumption is, there was no such delivery or consent.

II. The agreement for sale of the horse by Mrs. Co-

mins to Billington being conditional, the title to the horse remained in her until she sold to the plaintiff, when he acquired her title, and Billington had no title; but even if he had possession by her consent, which does not appear, he was merely a bailee of the horse until the condition should be fulfilled, and hence could convey no title to the defendant. "That personal property may be sold and delivered under an agreement for the payment of the price at a future day, and the title, by express agreement, remain in the vendor until the payment of the purchase price, is now well settled. Such payment is strictly a condition precedent; and until performance, the property does not vest in the buyer." (*Per Allen, J., in Ludden v. Hazen,* 31 *Barb.* 650, 651 *Herring* v. *Willard.* 2 *Sandf.* 418 *to* 420. *Strong* v. *Taylor,* 2 *Hill,* 326, 328. 2 *Kent's Com.* 497. *Barrett* v. *Pritchard,* 2 *Pick.* 512, *and cases cited at page* 516. *Dresser Manuf. Co.* v. *Waterston and others,* 3 *Metc.* 9.)

III. Mrs. Comins transferred to the plaintiff her title to the horse. This was the manifest intention and understanding of both of them, and the legal effect of their contract. Mrs. Comins proposed giving the plaintiff the Billington note for another horse. The plaintiff knew nothing of Billington, and declined taking the note unless Mrs. Comins guarantied it. She then produced the note, showed it to the plaintiff, and directing his attention to the agreement thereunder written, said to him it was already guarantied, or just as good; that by the agreement the horse was hers till paid for, and she would let him have the note and agreement, evidently meaning thereby to place Wait in her position, as to the horse, and to invest him with all her rights under the note and agreement. The plaintiff so understood it, and thereupon waived a guaranty of the note by Mrs. Comins. Upon what other hypothesis could they have agreed that the plaintiff received an equivalent to a guaranty of payment? "The court may resort to extrinsic circumstances surrounding the parties at the time

of the contract, so as to place itself in the situation of the parties whose language it is about to construe." ' (*Hasbrook* v. *Paddock*, 1.*Barb.* 635.)   By sale and delivery of the note and accompanying agreement, all the rights of the vendor thereunder passed to the vendee, the plaintiff. (*Story on Sales*, 301, 311, 312, 392.   *Olyphant* v. *Baker*, 5 *Denio*, 379, *and cases cited.*   2 *John.* 13, 15.   5 *id.* 335 to 344. *Howard's Code*, 1859, *pp.* 131, 132, *n.*   2 *Cowen*, 202 to 206, *and cases cited.   Green* v. *Hart,* 1 *John.* 591, *near close of opinion.*)

IV. The act of Billington, in assuming to sell the horse before fulfilling the condition, put an end to the contract on his part, and revested the possession of the horse in Mrs. Comins or her vendee, by operation of law, so as to enable the owner to maintain this action. (*Farrant* v. *Thompson*, 5 *Barn. & Ald.* 826.   *Daniels* v. *Pond*, 21 *Pick.* 367, 371.   *Ayer* v. *Bartlett*, 9 *id.* 156 to 159.   *Walcott* v. *Pomeroy*, 2 *id.* 122, 123; *and note* 1.   *See also cases cited in Barrett* v. *Pritchard*, 2 *Pick.*, *bottom of page* 516.)

V. Whether or not the defendant purchased the horse of Billington, without notice that Billington was not the owner, is immaterial.   The contemporaneous execution of the note and agreement is conclusive that the sale and delivery, (if any there was,) and the agreement therefor, were both conditional; hence Billington was merely a bailee, and, until the condition was fulfilled, had no power to make a valid sale of the horse, even to a *bona fide* purchaser, without notice.   This point was distinctly raised and decided in *Dresser Manuf. Co.* v. *Waterston and others*, (3 *Metc.* 9, 13, 15, *and the opinion of the court*.)   And see cases cited under first point.   In all the cases holding that a vendee of property sold conditionally can give a *bona fide* purchaser title, the reason given therefor is, either that in the sale to the vendee the agreement to deliver, or the delivery itself, was not conditional, or the condition had been waived.

And hence, that, as between such vendee and innocent third parties, the property passed to the vendee on delivery.

*Starbuck & Sawyer*, for the defendant.

I. There was a conditional sale of the horse by Mrs. Comins to Billington, accompanied by an actual and unconditional delivery. Billington, clothed with the possession of the horse, and the apparent right of absolute ownership, and claiming to be such owner, sold the horse to the defendant, who purchased him with no knowledge of any understanding or agreement between Billington and Mrs. Comins, paying the full value of the horse. The defendant, as a *bona fide* purchaser, without notice of any agreement between Billington and Mrs. Comins, was clearly entitled to hold the horse, as against Mrs. Comins or any one claiming the horse under her agreement with Billington. See 2 Kent's Commentaries, 498, where Chancellor Kent, in speaking of conditional sales, says: "Until the vendee performs the condition, the seller's right to the goods will be good, as against the buyer and his voluntary assignee, though not as against a *bona fide* purchaser from the vendee." See also *Haggarty* v. *Palmer*, (6 *John. Ch.* 438,) and *Buck* v. *Grimshaw*, (1 *Edw. Ch.* 140,) where the same doctrine is laid down. In the case of *Smith* v. *Lynes*, (1 *Seld.* 41,) the Court of Appeals expressly decided this point, asserting the superior right of a *bona fide* purchaser without notice, over that of the vendor, in the case of a conditional sale and non-performance of the condition by the vendee. See also, *Caldwell* v. *Bartlett*, (3 *Duer*, 352,) where Justice Bosworth, in delivering the opinion of the court, says: "It seems that in case of a sale and delivery, even where the delivery is conditional, a *bona fide* purchaser, from the person to whom the delivery was made, will acquire a valid title. If the sale was conditional, but the goods were delivered unconditionally, the title vested in Reed on the delivery, so that he could clearly confer title

on a purchaser in good faith." (*Also Beavers* v. *Lane*, 6 *Duer*, 238.) In *Fleeman* v. *McKean*, (25 *Barb.* 474,) which was a case of conditional sale, payment to be made on delivery of the goods, but was not demanded until two or three days after, the defendant contended that the condition had been waived by this delay, and that the establishment of any other rule would defeat the title of subsequent purchasers. The court held that the condition had not been waived, but that a sale by the purchaser to an innocent dealer, would have been valid; and Justice Strong, in delivering the opinion of the court, says: "When the owner voluntarily places the goods in the hands of the purchaser, and thus makes him the ostensible proprietor, a sale by the possessor to a *bona fide* purchaser without notice, would be valid, and pass the title."

II. Whatever rights Mrs. Comins may have had under her agreement with Billington, she transferred none of them to the plaintiff. She did not sell the horse to him, or convey to him her title to the horse; she merely sold him Billington's note as she would any other note, and not a word was said as to where the horse was, or who owned the horse.

III. The action being replevin, with the right in the defendant to elect, if successful, whether he will take a judgment for the return of the horse or for its value, and the verdict having been ordered for the plaintiff, subject to the opinion of the court at general term, the defendant claims judgment for the value of the horse, at $75, and interest from September 22, 1860, the time when the horse was taken from the defendant's possession.

*By the Court,* MULLIN, J. I entertain no doubt but that the sale of the horse by Mrs. Comins to Billington was a valid conditional sale. And that, as between Mrs. Comins and Billington, and all persons claiming through or under him, (except *bona fide* purchasers for value,) the title to

Wait *v.* Green.

·the horse remained in her. But we must assume, on the evidence, that the defendant was a *bona fide* purchaser from Billington, without notice of the condition, and for value paid. As against such a purchaser the title must be held to have passed, and that the defendant acquired a perfect title to the horse. (*Smith* v. *Lynes*, 1 *Seld.* 41. *Haggarty* v. *Palmer*, 6 *John. Ch.* 438. *Buck* v. *Grimshaw*, 1 *Edw.* 140. 2 *Kent's Com.* 498. *Hussey* v. *Thornton*, 4 *Mass.* 405. *Marston* v. *Baldwin*, 17 *id.* 606.)

It is said, by the plaintiff's counsel, that there is no evidence of any delivery of the horse by Mrs. Comins to Billington. The clause at the foot of the note seems to imply a delivery. But the horse did pass into the possession of Billington after the sale, and no objection seems to have been made by Mrs. Comins. Under such circumstances, the jury would have been justified in finding a delivery, not an absolute delivery, perhaps, but a conditional one, which was the kind of delivery contemplated on the sale.

It is also said, by the plaintiff's counsel, that Mrs. Comins transferred her interest in the horse to the plaintiff, and that when the note matured and was not paid, he had the same right to recover the value of the horse that Mrs. Comins had. The answer to this view of the case is, that there is not the slightest evidence that Mrs. Comins proposed to sell, or that the plaintiff offered to buy her interest, or any interest, in the horse. The note alone was the subject matter of the sale. It is true Mrs. Comins insisted that the note was secured by the horse, and hence her guaranty was unnecessary. The parties, doubtless, supposed that by the purchase of the note the plaintiff would stand in Mrs. Comins' shoes, as to the horse.

The horse had been sold to Billington, the day for payment had not arrived, and Billington had the actual possession of the horse. Under these circumstances, Mrs. Comins could not again sell the horse, because, 1st. The

title had already passed, conditionally, to Billington; and, 2d. She could not make a delivery of him. Mrs. Comins had an interest in the horse which was the subject of transfer; and now let us see whether she succeeded in transferring it. The note was the evidence of the indebtedness for the price of the horse. It was negotiable, and when transferred to another, carried with it whatever securities Mrs. Comins held for its payment. But the note was only operative when Mrs. Comins elected to consider the horse as the property of Billington. When the note matured, it was the duty of Mrs. Comins to elect to surrender the note and take the horse, or to treat the horse as sold and the note the evidence of the price. When she sold the note to the plaintiff, she put it out of her power to surrender it, and she must have been compelled to consider the sale of the horse as absolute. If I am right in supposing that the plaintiff got nothing, in his trade with Mrs. Comins, but the note, then he must look to it as the means of reimbursing himself for the price paid. The note could not be treated as the evidence of a debt unless the horse was sold absolutely. The claim which Mrs. Comins had on the horse, in the event of the non-payment of the note, was not by way of security for the note, but was wholly independent of it. The transfer of the note to the plaintiff carried with it, therefore, no interest in the horse, as it would have done if Mrs. Comins had held a mortgage on the horse as collateral to the note.

But while I am of the opinion that the plaintiff, by reason of the purchase of the note, acquired no interest in the horse, yet I am entirely clear that if Mrs. Comins had, on the maturity of the note, re-taken the horse, she would have been liable to the plaintiff for the amount of the note, or the consideration paid for it. But Mrs. Comins having treated the horse as sold absolutely, the

Wait *v.* Green.

note became a debt due from Billington, and the plaintiff must look to him for his pay.

If we could treat this case as a sale or transfer by Mrs. Comins of her interest in the sale to Billington, I would not hesitate to hold the plaintiff entitled to recover, as against Billington or other real purchasers in good faith. But such is not the transaction. The sale was a sale of the note, and nothing more. If the plaintiff had intended to insist on the dealing between him and Mrs. Comins as embracing more than this, it was his duty to have called on the court to submit the question to the jury. It was their province to give a more enlarged scope to the arrangement than its terms would indicate, provided the evidence would reasonably warrant such an inference. We have no such authority, and as the jury have not so found, we must hold the sale to the plaintiff to have been the sale of the note only, and that he thereby acquired no interest whatever in the horse.

But if the plaintiff is right in his position, that he is to be considered a purchaser of the horse, or of Mrs. Comins' interest in the horse, it follows that he is to be treated just as Mrs. Comins would be if no transfer of her interest had been made. As between her and the defendant, the latter is to be deemed a *bona fide* purchaser, without notice, for value paid, and his title, thus acquired, is superior to hers. The sale to Billington, as to such a purchaser, is to be deemed absolute, possession having been given to Billington. Such being the law, judgment must be given for the defendant on the verdict.

Judgment for the defendant.

[ONEIDA GENERAL TERM, January 7, 1862. *Bacon, Morgan, Mullin* and *Allen,* Justices.]